UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BUFFET CRAMPON S.A.S., | ) | |
| BUFFET CRAMPON U.S.A., | ) | |
| AND TOSCA INSTRUMENTS S.A.R.L, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:09-CV-347RM |
| | ) | |
| SCHREIBER & KEILWERTH, | ) | |
| MUSIKINSTRUMENTE GMBH AND | ) | |
| GEMEINHARDT COMPANY LLC, | ) | |
| d/b/a GEMSTONE MUSICAL | ) | |
| INSTRUMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION and ORDER

This cause is before the court on the motion of defendants Schreiber &
Keilwerth Musikinstrumente GmbH and Gemeinhardt Co. LLC, d/b/a Gemstone
Musical Instruments to dismiss Buffet Crampon S.A.S., Buffet Crampon U.S.A.,
and Tosca Instruments S.A.R.L.'s (collectively "Buffet") complaint pursuant to
Federal Rule of Civil Procedure 12(b)(3) based on a forum selection clause in the
Schreiber-Buffet Manufacturing and Supply Agreement "Wooden Instruments"
and/or on *forum non conveniens* grounds. Alternatively, the defendants seek to
dismiss Buffet's contract claims (Counts III and IV) under Rule 12(b)(6) on the
basis that the allegations are impermissibly vague, and Buffet's Indiana unfair
competition claim (Count V) under Rule 9(b) on the basis that the claim sounds
in fraud and must be pleaded with particularity. For the reasons that follow, the
defendants' motion to dismiss (doc. # 37) is granted in part and denied in part.

# I. BACKGROUND

Buffet Crampon S.A.S. is a French company with its principal place of business in France. Buffet Crampon U.S.A., a wholly-owned subsidiary of Buffet Crampon S.A.S., is a Florida company with its principal place of business in Florida. Tosca Instruments S.A.R.L. is the controlling shareholder of Buffet Crampon Holdings, which is a parent company of Buffet Crampon S.A.S., and is a Luxembourgian company with its principal place of business in Luxembourg. Schreiber is a German company with its principal place of business in Germany. Gemstone is a Delaware company with its principal place of business in Elkhart, Indiana. Buffet and Schreiber are international manufacturers of musical instruments with production located outside the United States, France and Germany, respectively. Gemstone sells musical instruments to retailers in the United States and abroad and is the exclusive distributor of Schreiber's musical instruments in the United States.

In 1997, Schreiber merged with Buffet to create one company. After various business transactions, both Buffet and Schreiber ultimately became part of a single parent company called The Music Group. The Music Group's member companies formed a world-wide distribution network under which each member company represented all Group products in their respective territories. As part of The Music Group, Schreiber manufactured wooden and plastic clarinets intended for student players, including the E11 clarinet that is the subject of this litigation, and sold them to Buffet. Buffet and Schreiber separated and became independent

businesses in 2005. As part of their separation, the companies entered into a series of agreements allocating their assets, including (1) a Sale and Purchase Agreement; (2) a Deed of Assignment; and (3) various manufacturing agreements, including the Wooden Instruments Agreement. Buffet alleges that through these agreements, as further discussed below, Schreiber sold certain intellectual property rights to Buffet, agreed not to compete with Buffet for a defined period of time regarding the products relating to the transferred intellectual property rights, and agreed to manufacture certain clarinets for Buffet to sell under its brand.

The Wooden Instruments Agreement set forth the terms under which Schreiber would manufacture and supply certain instruments (including the Buffett E11), accessories and cases to Buffet for a period of three years. Under the terms of the Wooden Instruments Agreement, Schreiber was obligated to supply Buffet with wooden clarinets manufactured by Schreiber according to agreed upon specifications and designs, which Buffet then sold to dealers as Buffet Crampon-branded clarinets. Under the Wooden Instruments Agreement, Schreiber also sold cases to Buffet with the Buffet Crampon logo embossed on top. The Wooden Instruments Agreement contains this choice of law and forum selection clause: "This Agreement is governed by French laws. In case of dispute over this Agreement['s] validity, performance or construction, the Commercial Court of Paris shall have exclusive jurisdiction." (WIA, Art. 14)

Through the Deed of Assignment, Schreiber assigned to Buffet "Schreiber IP Rights" — the instruments designed, manufactured, marketed and/or sold under the Buffet Crampon trademark — and all rights in the Buffet trademarks and goodwill associated with those instruments. The parties' Sale and Purchase Agreement contains a non-compete clause, which Buffet alleges prohibits Schreiber from competing with Buffet in the sale of French system Boehm wooden clarinets for a period of seven years beyond the termination of various agreements. (SPA, ¶ 9.1).

The Assignment and Sale and Purchase Agreement also contain choice of law and forum selection clauses. The Assignment provides that the governing law "shall be that of England and Wales" (Assign., ¶ 9) and that "[s]ubject to clause 10.2, courts of England and Wales shall have exclusive jurisdiction to settle any dispute between the parties whether arising in connection with this [agreement] or otherwise. Accordingly, the parties to this [agreement] irrevocably submit to such jurisdiction and waive any objection to it, on the ground of inconvenient forum or otherwise." (Assign., ¶ 10.1). Section 10.2 states that "[a] party may bring proceedings in the courts of any state other than England and Wales for the purpose of seeking: (a) an injunction, order or other non-monetary relief (or its equivalent in such other state) . . . ." The Sale and Purchase Agreement contains similar provisions. (SPA, ¶ 18).

In 2007, Buffet and Schreiber couldn't reach an agreement on the price to renew the Wooden Instruments Agreement for another term, so Schreiber

terminated the Wooden Instruments Agreement by giving written notice to Buffet. In March 2008, Buffet sued Schreiber in the Commercial Court of Paris for "abusive termination" and "sudden and brutal termination" of the Wooden Instruments Agreement. In June 2008, the Commercial Court of Paris suspended litigation, ordered Schreiber and Buffet to engage in mediation, and ordered the Wooden Instruments Agreement to remain in place pending the outcome of mediation. Mediation didn't resolve the issue, and in July 2008, the Commercial Court of Paris ordered that the Wooden Instruments Agreement remain in effect until that court entered final judgment. The Commercial Court of Paris issued a final judgment dated October 8, 2008, ruling for Schreiber on all claims and dissolving its interim orders.

From June 2008 to October 2008, the Wooden Instruments Agreement remained in effect pursuant to the Paris court's interim orders. During those months, Buffet continued to place orders for musical instruments and Schreiber continued to manufacture instruments. When the Commercial Court of Paris issued its final order, Schreiber had purchased raw materials and began to manufacture a total of 6,045 E11 clarinets and had purchased cases for the clarinets based on Buffet's previous orders and forecasts. Buffet refused to purchase any of the E11 clarinets manufactured by Schreiber or remaining parts that Schreiber had left in its inventory. Schreiber initiated summary proceedings against Buffet in the Commercial Court of Paris seeking to compel Buffet to purchase the clarinets and cases ordered before October 2008. In December 2008,

the Commercial Court of Paris held that Schreiber's claims were inappropriate for resolution in a summary proceeding.

In February 2009, Schreiber brought a suit against Buffet on the merits, seeking to force Buffet to purchase the E11 clarinets. Buffet eventually agreed to purchase 2,823 E11 clarinets and Schreiber withdrew its claims regarding the remaining clarinets. Schreiber was left with raw materials for and work-in progress on 3,222 unfinished clarinets. Schreiber presented evidence that discarding the unfinished clarinets would have resulted in a loss of about $1.3 million. Schreiber decided to make certain modifications to the 3,222 work-in-process clarinets — changing the thumb-rest, engraving the SCHREIBER trademark and logo in three places on the front, making the clarinet available in either silver or nickel keywork finish (the Buffet E11 was only available in silver keywork), and engraving a new serial number in a different location. After making these changes, Schreiber released the clarinets as their Limited Edition. Schreiber asserts that the LE and accompanying case contain no reference to Buffet.

Schreiber began selling the Schreiber LE and the accompanying case and accessories to Gemstone in February 2009 for Gemstone to market and sell in the United States. Schreiber is also selling various other wooden French system Boehm clarinets in the United States.

II. BUFFET'S CLAIMS

6

On August 4, 2009, Buffet filed a complaint alleging trade dress infringement in violation of Section 43(A) of the Lanham Act against both defendants (Schreiber and Gemstone) (Count I), reverse passing off in violation of Section 43(A) of the Lanham Act against both defendants (Count II), breach of the Deed of Assignment against Schreiber (Count III), breach of the Sale and Purchase Agreement against Schreiber (Count IV), and unfair competition under Indiana law against both defendants (Count V).

Buffet's trade dress infringement (Count I), trademark infringement (Count II), and unfair competition (Count V) claims involve the defendants' sale of the Schreiber Limited Edition clarinet and accompanying case, which Buffet contends is nearly identical to its E11 clarinet. Buffet says Schreiber, through Gemstone, is improperly misbranding and selling Buffet Crampon clarinets in the United States under Schreiber's own mark, packaged in Buffet Crampon's trade dress. Buffet claims the defendants have misbranded the clarinets by removing Buffet Crampon's mark and replacing it with Schreiber's mark. Buffet further argues that Gemstone is exploiting Buffet Crampon's mark and goodwill by, among other things, misrepresenting to purchasers that the misbranded clarinets are identical (or nearly identical) to Buffet Crampon's clarinets, only less expensive. Buffet seeks to enjoin the defendants from distributing clarinets and clarinet cases that infringe Buffet Crampon's trademark and trade dress and from engaging in unfair competition.

Buffet's breach of the Deed of Assignment claim (Count III) against Schreiber also involves Schreiber's sale of the LE clarinet and accompanying case.[1] Buffet argues that Schreiber assigned "Schreiber IP Rights" to Buffet and by selling a clarinet nearly identical to the Buffet E11, Schreiber is violating the Assignment. Buffet's breach of the Sale and Purchase Agreement claim (Count IV) involves Schreiber's sale of the LE clarinet and various other wooden French system Boehm clarinets that Schreiber is selling in the United States. Buffet contends that Schreiber is selling these clarinets in direct competition with Buffet in violation of the Sale and Purchase Agreement's non-compete clause.

## III. DISCUSSION

The defendants seek dismissal of Buffet's complaint, contending that Buffet's claims hinge upon interpretation of the Wooden Instruments Agreement, so that agreement's mandatory forum selection clause applies. They further contend that any claims not subject to the Wooden Instruments Agreement should be dismissed on *forum non conveniens* grounds. Alternatively, the defendants ask the court to dismiss Buffet's contract claims because they are impermissibly vague and Buffet's unfair competition claim for not pleading specifically as required by Rule 9(b).

---

[1] In its complaint, Buffet alleges that Schreiber has breached the Deed of Assignment by selling the LE and cases *and other wood clarinets* in the United States and elsewhere. It appears, though, through briefing this matter, Buffet doesn't contend that Schreiber violated the Deed of Assignment by selling *other wood clarinets* and instead, focuses this claim on Schreiber's sale of the LE and accompanying cases.

*A. Forum Selection Clause*

"A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-607 (7th Cir. 2003) (citations omitted); Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 760 (7th Cir. 2006). "When a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper." Carr v. ABC Fin., No. 1:08-CV-0318, 2009 WL 1615396, at *1 (S.D. Ind. June 9, 2009) (citations omitted). In resolving the issue, the court must take all allegations in the complaint as true, and although the court may examine facts outside the complaint, the court must resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987), *superceded by statute on other grounds*. A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Bonny v. The Soc'y of Lloyd's, 3 F.3d 156, 159 (7th Cir. 1993) (*quoting* M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).

The parties dispute whether the Wooden Instrument Agreement's forum selection clause applies to Buffet's claims. The Wooden Instruments Agreement provides that it is governed by French laws and that "[i]n case of dispute over this Agreement['s] validity, *performance or construction*, the Commercial Court of Paris shall have exclusive jurisdiction." (WIA, Art. 14) (emphasis added). The defendants

say the clause applies because Schreiber had been manufacturing the Buffet E11 clarinet pursuant to the Wooden Instruments Agreement and the work-in-progress clarinets that it modified and sold as Schreiber LE were in existence because of that agreement. Schreiber argues that to resolve each of Buffet's claims, a court must determine, as a threshold issue, whether Schreiber, upon Buffet's refusal to purchase the work-in-progress clarinets, had a contractual right under the Wooden Instruments Agreement to change their design and sell them. Schreiber says it owned the work-in-progress clarinets pursuant to the Wooden Instruments Agreement and so was authorized to take such actions. The defendants conclude that if Schreiber has a contractual right to redesign and sell the Schreiber LE and accompanying cases, they can't be liable for trade dress infringement, reverse passing off, or unfair competition.

Gemstone isn't a party to the Wooden Instruments Agreement, but the defendants argue that Buffet's claims against Gemstone are purely derivative of and integrally related to the allegations against Schreiber. According to the defendants, the court must first decide whether Schreiber had a contractual right to manufacture and sell the LE clarinet before it can decide the merits of Buffet's claims against Gemstone. The defendants reason that because the claims asserted against them are inextricably bound, suits in different forums could lead to inconsistent judgments and would require the duplicitous efforts of two courts. The defendants therefore argue that it's appropriate to dismiss both Schreiber and

Gemstone pursuant to the forum selection clause in the Wooden Instruments Agreement.

Buffet responds that it isn't suing Schreiber for breach of the Wooden Instruments Agreement, but rather sues for torts and breach of the Sale and Purchase Agreement and Assignment. The Sale and Purchase Agreement and Assignment expressly allow suit for injunctive relief to be brought in any jurisdiction. Buffet clarifies that it only seeks injunctive relief on its contract claims.[2] Buffet further notes that the Wooden Instruments Agreement doesn't address or contemplate the sale of clarinets by Schreiber to third parties. Buffet notes that the forum selection clause in the Wooden Instruments Agreement is narrowly drafted and limited in scope to disputes over the "Agreement['s] validity, performance or construction" and reasons that this lawsuit doesn't constitute such a dispute. Additionally, Buffet notes that its claims against Schreiber under the Sale and Purchase Agreement also involve selling other French system Boehm style wooden clarinets in direct competition with Buffet. These other wooden clarinets have nothing to do with the Wooden Instruments Agreement.[3]

---

[2] The defendants object to Buffet's attempt to alter the complaint by limiting the relief it seeks on the contract claims. In its complaint, Buffet sought both monetary damages and injunctive relief, but has now stated that it's only seeking injunctive relief on the contract claims. The court permits Buffet to limit the relief it seeks from the defendants, but instructs Buffet to formally amend its complaint to so indicate.

[3] The defendants contend that Buffet attempts to add new allegations to its complaint by stating that the contract claims are based only on Schreiber's sale of wooden instruments, not on the sale of plastic instruments and by stating that the breach of contract claims are based on an alleged "non-compete" provision in the Sale and Purchase

(continued...)

Buffet also contends that Gemstone, a non-signatory to the Wooden Instruments Agreement, has no basis to assert any of its terms against Buffet. Buffet notes that Gemstone had no business relationship with Schreiber when Schreiber and Buffet entered into the Wooden Instruments Agreement, isn't bound by the agreement, and doesn't consent to jurisdiction in Paris. Because there is a lack of mutuality, Buffet reasons that Gemstone cannot enforce the forum selection clause in the Wooden Instruments Agreement.

### 1. Buffet's Claims against Schreiber

A plaintiff's action might fall within the scope of a forum selection clause even when the plaintiff hasn't brought an action for breach of contract. Forum selection clauses can apply to non-contract claims. *See e.g.*, Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt. Ltd., 364 F.3d 884, 889 (7th Cir. 2004) ("[T]he existence of multiple remedies for wrongs arising out of a contractual relationship . . . does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes."); Hugel v. The Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) (forum selection

_____

[3](...continued)
Agreement and an assignment of certain intellectual property rights in the Assignment. The defendants assert that the court shouldn't consider these "new" allegations raised in Buffet's opposition brief. As discussed below, the court doesn't find these to be new allegations, but rather, finds that they were sufficiently raised by Buffet in its complaint.

clause applied to claim for tortious interference with business relations). While the Wooden Instruments Agreement's forum selection clause is narrower than clauses using the language "arising from", "concerning", or "in any way related," the language is broad enough to include any claims (contract or tort) brought by Buffet that require the agreement's construction or interpretation.

The court of appeals' decision in <u>Omron Healthcare, Inc. v. Maclaren Exports Ltd.</u>, 28 F.3d 600 (7th Cir. 1994), is particularly instructive on this point. Omron Healthcare had become the exclusive United States distributor of baby strollers manufactured by Maclaran Ltd., a British company. <u>Id.</u> at 601. Maclaran properly gave notice that it was terminating the distributorship and KidCo became Maclaran's distributor. <u>Id.</u> KidCo's strollers, however, identified Omron as the distributor and Omron sued Maclaran for trademark infringement. <u>Id.</u>

When Omron's distributorship ended, Maclaren had on hand 2,300 strollers manufactured with trademarks identifying Omron as the seller. <u>Id.</u> Maclaren blamed Omron for this situation, contending that after receiving notice of termination, Omron placed firm orders for the strollers, demanded that Maclaren build them, and then refused to accept delivery. <u>Id.</u> Omron denied responsibility for the excess inventory. <u>Id.</u> Maclaren and its new distributor pasted labels over the Omron marks and included literature identifying KidCo as the reseller, but they didn't succeed in obliterating all traces of Omron's trademarks. <u>Id.</u>

Maclaren moved to dismiss, relying on a forum selection clause in its contract with Omron: "The parties hereto agree that all disputes arising from this

Agreement . . . shall be referred to the High Court of Justice of England which will have exclusive jurisdiction to determine such disputes." Id. at 601-602. Omron responded that the dispute arose out of trademark infringement, not the contract, so the forum selection clause didn't apply. Id. at 602.

The court of appeals decided that the case was properly dismissed because the parties' dispute arose out of the agreement. Id. at 302-604. The court reasoned:

> Although the distribution agreement does not provide expressly for the means of wrapping up the parties' affairs and disposing of unsold inventory, courts regularly imply such terms - not as legal rule independent of the contract, but as implicit terms under the contract. When the contracting parties have not provided explicitly for some contingency, courts impute to their contract the provisions that they probably would have adopted had they focused on the subject and resolved it explicitly. These imputed terms are justified not only by a desire to make contract a more productive institution by holding down the costs of bargaining, but also by the parties' knowledge of the common law history of judicial gap-filling. Because these parties did not provide expressly for the disposition of unsold inventory, they invited a process of construction that will resolve their dispute. A court might say that the agreement implicitly licensed Maclaren to use the marks incident to a commercially reasonable means of selling the inventory. There are other possible outcomes, but all depend on an understanding of the parties' written bargain and its implied terms.

Id. at 602.

Based on the reasoning in Omron, Buffet's claims involving Schreiber's sale of the LE clarinet require an interpretation of the express and implied terms of the Wooden Instruments Agreement. Schreiber presented evidence that the Paris court issued orders requiring it to continue manufacturing the clarinets pursuant

to the Wooden Instruments Agreement, but once that court issued a final order in Schreiber's favor, Schreiber was left with raw materials and half-finished clarinets that Buffet wouldn't purchase. As a result, Schreiber made a few changes to the instruments and sold them under its name. The court will need to interpret the express[4] and implied terms of the Wooden Instruments Agreement to determine if Schreiber was authorized to take such actions.

The forum selection clause in the Wooden Instruments Agreement is narrower than the clause in <u>Omron</u> and only applies to disputes over the Agreement's validity, performance or construction. This dispute, though, falls within this narrower forum selection clause. Other courts construing similar language have found that the forum selection clause applied to the plaintiff's tort claims when the defendants relied on the contract as a defense to such claims.

---

[4]Although not pertinent to today's discussion, it appears that the following provisions in the Wooden Instruments Agreement may be relevant to this discussion. Article 2 states that "[t]he first 8 weeks of forecasts [were] deemed to be a purchase order and binding upon the Purchaser and the Supplier . . ." (WIA, Art. 2). Article 6 states that "[e]xcept otherwise agreed by [Schreiber] before any delivery, all Products shall remain [Schreiber's] sole ownership until payment of the corresponding price has been fully paid up." (WIA, Art. 6). Article 9 contains terms regarding the exclusivity of the parties' agreement and as to Schreiber states: "The Supplier shall not, directly or indirectly, . . . supply to a third party, any French System wooden clarinet or oboe which has all or some of the characteristics specified in Schedule 6 . . . ." (WIA, Art. 9). In the event that materials or stock remained upon termination of the Wooden Instruments Agreement, Article 10 contains further provisions relating to the sale of the inventory back to Buffet. That article provides that if termination is caused by Buffet's breach of the Wooden Instruments Agreement, Buffet shall purchase the finished products (up to two weeks production), finished products arising from completing work-in-progress, and raw materials. (WIA, Art. 10). "Upon termination of [the WIA] on any other grounds than a breach of [Buffet], purchase of the stocks described above shall remain an option for [Buffet]." (WIA, Art. 10).

*See* Penn, LLC v. New Edge Network, Inc., No. 03-C-5496, 2003 WL 22284207, at *2 (N.D. Ill. Oct. 3, 2003) ("If enforcement of a provision in the service agreement is clearly a defense to [plaintiff's tort] claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause.") (*citing* Omron Healthcare, 28 F.3d at 603); *see also* Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427, 1433-1434 (N.D. Cal. 1997) (finding that where the defendants' defense to the plaintiff's copyright infringement claim involved interpretation of an underlying contract containing a forum selection clause, the plaintiff's claims fell within the scope of that clause).

Omron also differs because two other agreements have competing forum selection clauses that apply to this litigation. Buffet claims that the defendants violated the terms of the Sale and Purchase Agreement and Assignment by selling the Schreiber LE; these contracts contain forum selection clauses that allow the court to hear this dispute. The court must decide, then, whether the forum selection clause in the Wooden Instruments Agreement or the Sale and Purchase Agreement and Assignment take precedence.

Buffet contends that the Assignment gave Buffet the right, title and interest in the Buffet trademarks and, because Schreiber was sub-manufacturing the Buffet E11 as of the date of the Assignment, Buffet owns all design rights, trademarks and goodwill associated with the E11. Buffet therefore reasons that Schreiber is breaching the Assignment by selling a clarinet — the Schreiber LE — with a design nearly identical to the E11. Although the defendants contend that

this contract doesn't apply to the present situation because the LE didn't exist in 2005, Buffet points out that the E11 existed in 2005 and Schreiber is prohibited from selling an identical or nearly identical clarinet. Whether Schreiber breached the Assignment by selling the LE is a fight for another day; it is enough to note that Buffet has raised a cognizable claim under the Assignment.

The Sale and Purchase Agreement entered into between Schreiber and Buffet has a non-compete clause that allegedly prohibits Schreiber from competing with Buffet in the sale of French system Boehm wooden clarinets for a period of seven years beyond the termination of various agreements between the parties. Buffet alleges that the defendants violated the non-compete clause in the Sale and Purchase Agreement by selling the Schreiber LE and accompanying cases.[5] The non-compete clause states that "the Seller will not (and will procure that no member of the Retained Group will) . . . compete[] with the Restricted Business within the Restricted Area." (SPA, ¶ 9.1). The Agreement defines "Retained Group" to mean "The Music Group and its subsidiaries and Subsidiary Undertakings from time to time excluding (but only from the relevant Completion Date) [Buffet Crampon]." (SPA, p. 10). Buffet submits evidence to show that when the Sale and Purchase Agreement was executed, Schreiber was a subsidiary of The Music Group. Although the defendants present arguments and conflicting evidence to demonstrate that Schreiber wasn't bound by the non-compete clause,

---

[5] The court addresses below Buffet's claim that Schreiber also breached the Sale and Purchase Agreement by selling other wooden clarinets.

the court declines to address the merits of Buffet's allegations at this time. It is enough to say that Buffet presents a cognizable claim for breach of the Sale and Purchase Agreement.

The Wooden Instruments Agreement, Sale and Purchase Agreement and Assignment all were executed on June 9, 2005. Resolution of Buffet's claims involving the Buffet E11 and Schreiber LE will require an analysis of all three agreements, their interrelatedness and application to this dispute. Because those agreements contain conflicting forum selection clauses, the court must decide which clause takes precedence. The Sale and Purchase Agreement and Assignment contain much broader forum selection clauses than the Wooden Instruments Agreement. For example, the forum selection clauses in the Assignment applies to "any dispute between the parties whether arising in connection with this deed *or otherwise*." (Assign., ¶ 10) (emphasis added). The forum selection clauses in the Sale and Purchase Agreement and Assignment, though, only afford this court jurisdiction to award injunctive relief to Buffet. In the likely event that Buffet also intends to seek monetary damages against Schreiber, Buffet would have to bring such claims in England or Wales. So while the forum selection clauses in the Assignment and Sale and Purchase Agreement are broader, they limit the relief Buffet can seek from this court.

More importantly, it appears that the Sale and Purchase Agreement and Assignment will be less significant in determining the outcome of Buffet's claims involving Schreiber's sale of the LE. The central issue in those claims is whether,

notwithstanding the parties' agreement in the Assignment or Sale and Purchase Agreement, Schreiber could use the work-in-progress materials and sell them under its own brand. Resolution of this question will require interpretation of the Wooden Instruments Agreement, the parties' course of dealing with respect to that agreement, and the Paris court's interim orders with respect to that agreement. Since the Wooden Instruments Agreement must be construed to determine this central issue, its forum selection trumps the forum selection clauses in the Assignment and Sale and Purchase Agreement.

As noted, not all of Buffet's claims involve the sale and marketing of the Schreiber LE. Part of Buffet's claim for breach of the Sale and Purchase Agreement involves Schreiber's manufacturing and sale of other French style Boehm wooden clarinets.[6] Buffet's claim for injunctive relief for the sale of these other wooden instruments is properly before this court pursuant to the forum selection clause in the Sale and Purchase Agreement.

## 2. *Buffet's Claims against Gemstone*

The court next must decide whether Gemstone can enforce the forum selection clause in the Wooden Instruments Agreement as a non-signatory to that agreement. "[T]o bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be

---

[6]As indicated in footnote 1, it appears that Buffet is no longer contending that Schreiber breached the Assignment by selling other wooden instruments.

19

bound." Hugel v. Corp. of Lloyd's, 999 F.2d at 209 (citation omitted). "While it may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required." Hugel v. Corp. of Lloyd's, 999 F.2d at 209-210, n. 7 (internal citations omitted). The court of appeals has stated that these "vague formulas can be given meaning by reference to the principle of mutuality." Frietsch v. Refco, Inc., 56 F.3d 825, 827 (7th Cir. 1995) ("[T]he principal of mutuality retains undeniable appeal in regard to the scope of forum selection clauses."). Pursuant to the principle of mutuality, a non-signatory may invoke a forum-selection clause to the extent the clause could be invoked against it. The cases that follow further illustrate these concepts.

In Bonny v. Society of Lloyd's, 3 F.3d 156, 157-158 (7th Cir. 1993), several investors sued alleging fraud and violation of securities laws because they were induced to become members of the Society of Lloyd's. The investors couldn't deal directly with Lloyd, but had to designate Members' Agents to handle their affairs. Id. at 158. The investors had entered into an agreement stating that disputes between them and the Members' Agents would be arbitrated in England under English law. Id. Northfield, King and Hunken (the local defendants ) were agents of Lloyd's and Lime Street (a Members' Agent affiliated with Lloyd's) who solicited the investors. Id. The local defendants weren't signatories to the agreement, but the court found that they were closely related because they were agents of the signatories, the plaintiffs alleged that their omissions and misrepresentations were

attributable to all defendants, and the parties agreed that they were indispensable to the suit. Id. at 162. The district court therefore didn't err by finding that the local defendants were integrally related such that the suit against all defendants should be kept in one forum — i.e., England. Id.

The court in Bonny v. Society of Lloyd's "recongize[d], however, that dismissal of the suit as to the local defendants could have the effect of unjustly allowing these defendants to escape suit if an English court cannot gain personal jurisdiction over them or cannot serve them with process." 3 F.3d at 162-163. The court therefore directed "the district court to qualify its dismissal of the entire case on the condition that the local defendant agree to appear voluntarily in England if suit is refiled there." Id. at 163.

In Frietsch v. Refco, the plaintiffs entered into contracts with certain promoters and trustees to invest in what, according to the complaint, they later learned was a Ponzi scheme orchestrated by Refco. 56 F.3d at 827. Although Refco wasn't a signatory to the contracts, he sought to enforce the contracts' forum selection clause requiring such disputes to be heard in Germany. Relying on the principle of mutuality, the court stated that since the basis of the plaintiffs' claim is that "Refco totally controlled the promoters and trustees who [were] nominal signatories of the investment contracts, the plaintiffs could argue as justification for enforcing the forum selection clause . . . that the clause binds Refco as the secret principal of the signatories." Id. at 828 (citations omitted). Mutuality therefore required Refco be allowed to invoke the clause. Id. Compare Wendt v.

Handler, Thayer & Duggan, LLC, 613 F. Supp. 2d 1021, 1031 (N.D. Ill. 2009) (finding that the defendant, who was a non-signatory to the forum selection clause, couldn't enforce the clause because it was only a limited agent of the signatory; the court distinguished this case from Frietsch where the signatory was "entirely controlled" by the non-signatory).

Whether Gemstone is "closely related" to Schreiber such that it can enforce the forum selection clause isn't easily answered. Schreiber's and Gemstone's defenses to Buffet's claims are interdependent. As the defendants point out, if Schreiber succeeds in defending against Buffet's claim on the basis that it was permitted to sell the left over inventory under its brand name pursuant to the Wooden Instruments Agreement, Gemstone can defend against Buffet's trademark infringement, trade dress infringement, and unfair competition claims on that basis. If Schreiber isn't liable to Buffet for selling the clarinets, Gemstone shouldn't be liable as Schreiber's distributor (except to the extent that Buffet might have an independent claim against Gemstone for making allegedly false and misleading statements to Buffet's potential customers).

While the court would be inclined to dismiss this entire action if Gemstone conceded to jurisdiction in France, Gemstone hasn't agreed to waive personal jurisdiction. Even in Bonny v. Soc'y of Lloyd's, in which the court found that the local defendants were integrally related because they were used to carry out the allegedly violative acts and were indispensable to the suit, the court directed the district court to qualify its dismissal of the entire case on the condition that the

local defendants agree to appear voluntarily in England. The defendants have asked this court to enforce the forum selection clause to dismiss Gemstone from this case, but Gemstone isn't willing to concede to jurisdiction in France. This fact alone distinguishes this case from the cases the defendants cite in support of their motion. *See e.g.*, <u>Methode Elec. v. Delphi Automative Sys. LLC</u>, 639 F. Supp.2d 903 (N.D. Ill. July 16, 2009) (granting signatory defendant's motion to *transfer* pursuant to 28 U.S.C. § 1404(a) and applying ruling to non-signatory defendant; there was no indication that non-signatory defendant was beyond the jurisdictional reach of the transferee court) (emphasis added).

The court of appeals has given meaning to the term "closely related" by reference to the concept of mutuality. <u>Frietsch v. Refco</u>, 56 F.3d at 827. Nothing supports a finding that Buffet could have enforced the forum selection clause against Gemstone had Buffet filed suit in France. Schreiber didn't control Gemstone, nor was Gemstone a nominal signatory as in <u>Frietsch v. Refco</u>. Nothing suggests that Gemstone was even aware of the Wooden Instruments Agreement or the extent of Buffet and Schreiber's relationship. The evidence simply doesn't support a finding that it was foreseeable to Gemstone that it could be bound by the Wooden Instruments Agreement. The mutuality and foreseeability requirements are absent.

Recognizing the lack of mutuality, the defendants ask the court to dismiss this litigation so that Buffet can pursue its case against Schreiber in Europe and then, if applicable, return to the United States to prosecute its claims against

Gemstone. The defendants' requested relief denies Buffet its right to seek preliminary injunctive relief against Gemstone; the court will not deprive Buffet of this right. This ruling might result in two courts adjudicating similar issues of liability, but Schreiber created this risk when it entered into business with an Indiana company to sell the Schreiber LE in the United States.

In an analogous argument, Buffet states that if Gemstone is subject to suit here, the court should exercise its discretion to keep all claims in the interest of judicial economy. *See* Curwood Inc. v. Prodo-Pak Corp., No. 07-C-544, 2008 WL 644884, at *6-7 (E.D. Wis. Mar. 7, 2008) (in considering a motion to transfer pursuant to 28 U.S.C. § 1404, the court found that even though the forum selection clause applied to some of the plaintiff's claims, it didn't apply to others, and in the interests of judicial economy, the court declined to split the claims and kept the entire suit). "[W]here a plaintiff's suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable." Curwood v. Prodo-Pak, 2008 WL 644884, at *7 (citations omitted). Severing claims is an "extraordinary remedy" that courts should try to avoid, Curwood Inc. v. Prodo-Pak, 2008 WL 644884, at *6, but it is appropriate in this case. Litigation already pends in Paris involving the Buffet E11 work-in-progress clarinets and materials, so judicial economy favors requiring Schreiber and Buffet to bring this related dispute before that court.

The court therefore GRANTS the defendants' motion to dismiss pursuant to Rule 12(b)(3) as to Buffet's claims against Schreiber in Counts I, II, III, and V and Count IV to the extent Buffet's claims involve the sale of the Schreiber LE. The court DENIES the defendants' motion to dismiss pursuant to Rule 12(b)(3) as to Buffet's claims against Gemstone in Counts I, II, and V and Buffet's claim against Schreiber in Count IV as to the sale of other wooden instruments.

### B. Forum Non Conveniens

The court next addresses the defendants' request that this case be dismissed pursuant to the doctrine of *forum non conveniens*. Buffet moved to strike the defendants' request to dismiss for *forum non conveniens* because it was raised for the first time in the defendants' reply brief and arguments raised for the first time in reply briefs generally are waived. Amerson v. Farrey, 492 F.3d 848, 852 (7th Cir. 2007). The court finds it appropriate to address the defendants' argument because Buffet was granted leave to file a sur-reply, had the opportunity to respond, and responded.

"The common law doctrine of *forum non conveniens* allows a trial court to dismiss a suit over which it would normally have jurisdiction if it best serves the conveniens of the parties and the ends of justice." Clerides v. Boeing Co., 534 F.3d 623, 627-628 (7th Cir. 2008) (citation omitted). The court can dismiss a case on the ground of *forum non conveniens* "when an adequate available forum exists and trial in the chosen forum would establish oppressiveness and vexation to a

defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." Clerides v. Boeing, 534 F.3d at 628 (internal quotations and citation omitted). A *forum non conveniens* analysis involves two inquiries: "First, the court must determine whether an adequate alternative forum is available; second it must weigh several private and public interest factors related to the proper location for the litigation." Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 718 (7th Cir. 2002). "A forum is 'available' if all parties are amendable to service and are within the forum's jurisdiction." In re Bridgestone/Firestone, Inc., 420 F.3d 702, 704 (7th Cir. 2005) (internal quotations and citation omitted). "A forum is 'adequate' if the parties will not be deprived of all remedies or treated unfairly." In re Bridgestone/Firestone, 420 F.3d at 704 (internal quotations and citation omitted).

The defendants point out that if Buffet's claims against Schreiber and Gemstone involving the sale of the Schreiber LE are dismissed, the only remaining claim — alleged violation of the Sale and Purchase Agreement for sale of other wooden instruments (Count IV) — is against Schreiber, a German corporation. The defendants therefore argue that the court should exercise its discretion to dismiss this claim under the doctrine of *forum non conveniens*. The court has found that Gemstone isn't bound by the forum selection clause and shouldn't be dismissed. Because Gemstone remains a party, the court can't dismiss the entire case for *forum non conveniens*. There is no indication that Gemstone is within the

26

jurisdiction of a court in England or Wales, so the defendants can't meet the first requirement that all parties be within the jurisdiction of the alternative forum and amendable to service there. <u>In re Bridgestone/Firestone</u>, 420 F.3d at 704.

It remains to decide whether the court should dismiss Count IV pursuant to *forum non conveniens*. The remaining allegations in Count IV apply only to Schreiber and involve the sale of non-LE clarinets and so are unrelated to the claims against Gemstone. "Depending upon the facts of the particular case, a district court may dismiss part of a lawsuit [on the basis of *forum non conveniens*] while deciding the merits of other issues." <u>Scottish Air Intern., Inc. v. British Caledonian Group, PLC</u>, 81 F.3d 1224, 1234 (2d Cir. 1996). An alternative forum exists as to Buffet's claim against Schreiber. The parties don't dispute that Schreiber would be subject to jurisdiction in England and nothing suggests that the courts of England are incapable of providing a remedy to either party. In fact, as discussed, Buffet can only seek injunctive relief from this court on Count IV, while a court in England and Wales can provide both injunctive and monetary relief.

The court now turns to the public and private factors. The private interest factors a court may consider include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Clerides v. Boeing</u>, 534 F.3d at

628 (*citing* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The public interest factors include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Clerides v. Boeing, 534 F.3d at 628 (*citing* Gulf Oil v. Gilbert, 330 U.S. at 508-509).

Generally, "a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant." Clerides v. Boeing, 534 F.3d at 628. But if the plaintiff is a foreign citizen and resident, its "choice of the United States as a forum should be accorded less deference than if the choice is made by a United States plaintiff." Clerides v. Boeing, 534 F.3d at 628 (citation omitted). The Sale and Purchase Agreement's non-compete clause states that "the Seller undertakes with the Buyers that . . . ." (SPA, ¶ 9.1). The buyers are defined as Tosca and Tenorpaul S.A.R.L. (SPA, p. 4). Plaintiff Tosca is located in Luxembourg and is the controlling shareholder of Buffet Crampon Holdings, which is the parent company of Buffet Crampon S.A.S. Buffet Crampon S.A.S., located in France, and Buffet Crampon U.S.A., located in Florida, are also parties to the Sale and Purchase Agreement; Buffet Crampon U.S.A. is defined as the "US Buyer" in the agreement. While the court gives Buffet's choice of forum some deference because Buffet U.S.A. is located in the

United States, it doesn't appear Buffet would be inconvenienced if required to litigate its claims against Schreiber in England given the parties' strong presence in Europe.

As to the private factors, Schreiber contends that the relevant witnesses and documents from Buffet and Schreiber are located in France and Germany, respectively, and traveling to Indiana will involve considerable expense. Schreiber further contends that subpoenaing third-party witnesses for depositions and trial likely would be difficult, if not impossible.

Buffet's allegations in Count IV involve breach of a non-compete clause arising from Schreiber's sale of wooden clarinets in the United States and elsewhere. While Schreiber might have witnesses and documents located outside the United States necessary for resolution of this claim, it appears that the primary evidence will be the Sale and Purchase Agreement and related documents that can readily be made available to the parties and the court. In any event, without more specific details about the documents and witnesses located outside the United States that are necessary to resolution of this claim, Schreiber's blanket assertions are alone insufficient to support dismissal. The alleged wrongful competition and clarinet sales are happening in the United States and entering into the United States market through Gemstone in Indiana. The Gemstone representatives and Schreiber dealers involved in the sale are located here; some of the relevant discovery and witnesses in this matter must be located in the United States. The private factors don't favor dismissal.

Conversely, the public factors favor dismissal. The law of England and Wales govern the Sale and Purchase Agreement and not surprisingly, this court isn't well versed in English and Welsh law. A court in England or Wales is in a much better position to efficiently and accurately apply the governing law to Buffet's claims. "The demands of a global economy require that American courts be amendable to permitting litigation that can be handled much more efficiently in foreign forums to be sent to those forums." U.S.O. Corp. v. Mizuho Holding Co., 547 F.3d 749, 752 (7th Cir. 2008). Further, this court only has jurisdiction to determine injunctive relief on the breach of contract claim. If Buffet intends to seek monetary damages for claims in Count IV, it will need to seek such relief in a court of England or Wales. Such bifurcation of Buffet's remedies could lead to duplicitous litigation and the possibility of conflicting judgments. Finally, while the United States has an interest in regulating commerce taking place in the United States, it doesn't necessarily have an interest in determining the validity of a non-compete agreement entered into between foreign companies regarding products manufactured abroad.

While the private and public factors in this case point in opposite directions, the private factors outweigh the public factors, so Buffet's choice of forum stands. The court DENIES the defendants' motion to dismiss for *forum non conveniens.*

*C. Motion to Dismiss Contract Claims*

Schreiber moves to dismiss Buffet's contract claims under 12(b)(6) for failure to state a claim. Although Buffet alleges in Count IV that Schreiber breached the Sale and Purchase Agreement, Schreiber contends that the complaint provides no detail about the purported breach, including the specific provisions of the contract that Schreiber allegedly breached and why Buffet is entitled to relief.

To withstand a motion to dismiss, the plaintiff must show through well-pleaded factual allegations that "it is plausible, rather than merely speculative, that [it] is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted). Although a complaint needn't contain detailed factual allegations, "a plaintiff has the obligation to provide the factual 'grounds' of [its] entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" Bissessur v. Ind. Univ. Bd. of Trustees, 581 F.3d 599, 602 (7th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A complaint must allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (citing Bell Atl. v. Twombly, 550 U.S. at 556). A plausible claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)).

In the complaint, Buffet alleges that 1) Buffet and Schreiber entered into the Sale and Purchase Agreement; (2) under the agreement, Schreiber agreed to refrain from certain business activities relevant to this dispute for a specified period of time; (3) Buffet performed all covenants and conditions required of it under the agreement; (4) by selling misbranded Schreiber LE clarinets and other wooden clarinets in the United States, Schreiber breached the agreement; and (5) Schreiber's breach caused Buffet to suffer harm necessitating, among other things, injunctive relief. Schreiber contends that this claim is impermissibly vague and deficient because Buffet doesn't cite to the contract provisions allegedly breached. Buffet indicates that it omitted reference to the specific contract provisions to comply with the agreement's confidentiality clause.

The court in Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC, No. 08 C5382, 2009 WL 2059934 (N.D. Ill. July 9, 2009), recently addressed a similar issue. The plaintiff argued that the counterclaim failed to meet Rule 8's notice pleading standard because the allegations "fail[ed] to provide notice of what contract provision [intervening-plaintiff] allegedly breached." Id. at *11. The court, noting the lack of any authority for a requirement that "a plaintiff . . . identify which contractual provision it believes was breached so long as the contract itself is identified[,]" held that defendant's allegations of specific conduct which exceeded the terms of the contract at issue were sufficient to state a claim for breach. Id.

Similarly, the facts alleged in Buffet's complaint are sufficient to put Schreiber on notice as to the nature and grounds of Buffet's claim and are sufficient to raise Buffet's right to relief beyond a speculative level. The court DENIES the defendants' motion to dismiss Count IV pursuant to Rule 12(b)(6).

### D. Motion to Dismiss Unfair Competition Claim

The defendants seek to dismiss Buffet's claim for unfair competition (Count V), contending that it sounds in fraud and so must be pleaded specifically as required by Rule 9. The defendants point out that Buffet hasn't alleged the "who," "when," "where," and "how," of the alleged fraud. Buffet responds that Rule 9(b) doesn't apply to claims of unfair competition.

To determine whether Buffet must plead its unfair competition claim with particularity, the court must first determine whether unfair competition is a claim sounding in fraud. A heightened pleading standard is required for claims "sounding in fraud." Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) (stating that since Rule 9(b) requirements apply to averments of fraud, not claims of fraud, whether the rule applies depends upon plaintiff's factual allegations). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." Borsellino v. Goldman Sachs, 477 F.3d at 507 (citations omitted); see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 669-670 (7th Cir. 2008) (finding that an

33

unfair practices claim brought under Illinois Consumer Fraud Act didn't need to meet the heightened pleading standard under Rule 9(b) "[b]ecause neither fraud nor mistake is an element of unfair conduct under [the Act]").

Indiana law recognizes a cause of action for unfair competition, defined as "the attempt to create confusion concerning the source of the unfair competitor's goods." Felsher v. Univ. of Evansville, 755 N.E.2d 589, 598 (Ind. 2001) (*citing* Westward Coach Mfg. Co. v. Ford Motor Co., 388 F.2d 627, 633 (7th Cir. 1968)).

> Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

Felsher v. Univ. of Evansville, 755 N.E.2d 589, 598 (Ind. 2001) (*quoting* W. Page Keeton, *Prosser and Keeton on the Law of Torts,* 1015 (5th ed.1984)).

The Indiana Supreme Court again addressed claims arising under the broad "unfair competition" label, namely passing off and trade name infringement, in Keaton and Keaton v. Keaton, 842 N.E.2d 816 (Ind. 2006). The court in Keaton explained that the "tort of 'passing off' . . . is a species of unfair competition that emerged in the nineteenth century as a type of fraud." Id. at 819 (citations omitted). "Under this doctrine, liability is imposed for the intentional misrepresentation of goods or services as those of another." Id. (citations omitted). "'Passing off' is nothing more than a subspecies of fraud . . . [and] requires a showing of intentional deception by the defendant." Id.

Unfair competition isn't limited to claims of passing off. <u>Keaton and Keaton</u> <u>v. Keaton</u>, 842 N.E.2d 820. "Nor does every ground of unfair competition require intentional wrongdoing," and rather, "also includes actions for the interference with a contract or business relationship, as well as for predatory price cutting." <u>Id.</u> (internal quotations and citations omitted). "Use of confusingly similar corporate, business and professional names has been labeled unfair competition by courts[,]" and "is more precisely described as trade name infringement, which like passing off, is a subspecies of unfair competition." <u>Id.</u> "At common law, trade name infringement exists when a defendant's use of a name is likely to cause confusion as to the source of goods or products, irrespective of whether the defendant has a subjective intent to deceive or confuse." <u>Id.</u> Even though evidence of an intent to deceive isn't required, it can create a rebuttable inference of a likelihood of confusion. <u>Id.</u>

Buffet Crampon's claim of unfair competition is based upon a range of misconduct, including:

> creating confusion concerning the source of the Misbranded Clarinets and cases, trading off the goodwill associated with Buffet Crampon's trade dress, materially misbranding Buffet Crampon's products by removing Buffet Crampon's mark from the Misbranded Clarinets and cases and affixing a Schreiber mark in its place, and attempting to deceive dealers, customers, and the public at large concerning the quality, manufacturing origin and availability of Buffet Crampon's E11 clarinets.

(Buffet's Complaint, ¶ 63). Buffet also alleges that the defendants have acted with malice, fraud, gross negligence and/or oppression. (Buffet's Complaint, ¶ 65).

Because neither fraud nor mistake is a required element of unfair competition in Indiana, certain claims of unfair competition need not be pleaded specifically. *See generally*, <u>Windy City Metal v. CIT Tech</u>., 536 F.3d at 669-670. On the other hand, to the extent Buffet asserts claims sounding in fraud — *i.e.,* "passing off", intentional misrepresentation, etc. — the heightened pleading requirement is triggered at least as to those allegations. Buffet's allegations in Count V don't past muster under this heightened pleading standard. <u>Borsellino v. Goldman Sachs</u>, 477 F.3d at 507 ("A complaint alleging fraud must provide 'the who, what, when, where and how.'") (citations omitted).

It appears that Buffet's complaint, at least in part, is "grounded in fraud" — *i.e.,* that the defendants "attempted to deceive dealers, customers, and the public at large . . . ." If Buffet intends to bring forth an unfair competition claim under Indiana law sounding in fraud, it must amend its complaint within fifteen days form the date of this order to meet the requirements of Rule 9(b) as to such averments. *See* <u>Planet Coffee Roasters, Inc. v. Dam</u>, No. SACV 09-00571, 2009 WL 2486457, at *5 (C.D. Cal. Aug. 12, 2009) ("To the extent that Plaintiff alleges fraudulent conduct in its unfair competition causes of action, Plaintiff must either allege particular facts sufficient to satisfy the requirements of Fed. R. Civ .P. 9(b) or alternatively, eliminate the allegations of fraud in those causes of action.").

IV. CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion to dismiss (doc. # 37) Buffet's claims against Schreiber in Counts I, II, III, and V and Count IV to the extent Buffet's claims involve the sale of the Schreiber LE. The court further INSTRUCTS Buffet that to the extent it intends to assert a claim for unfair competition that sounds in fraud, it must amend its complaint within fifteen days from the date of this order to meet the requirements of Rule 9(b) as to such averments. The court DENIES the defendants' motion to dismiss in all other respects.

By separate order, the court will set Buffet's preliminary injunction motions for hearing.

SO ORDERED.

ENTERED:  November 2, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court